CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 23, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| James W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:25-cv-00016 |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff James W.'s Social Security Appeal.  (Dkts. 1, 14.)  Pursuant to Standing Order 2025-02 and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the Honorable Joel C. Hoppe, U.S. Magistrate Judge, for a recommended disposition.  On January 29, 2026, Judge Hoppe entered a Report and Recommendation ("R&R"), recommending that the court affirm the Commissioner of Social Security's final decision.  (Dkt. 20.)  James filed timely objections to the R&R on February 26, 2026.  (Dkt. 23.)

For the following reasons, the court will overrule Plaintiff's objections, adopt the R&R in its entirety, and affirm the Commissioner's final decision.

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

## I.    Standard of Review

### A.  District Court Review of Magistrate Judge's Recommendations

Where a dispositive motion has been referred to a magistrate judge, the magistrate judge submits "proposed findings of fact and recommendations for the disposition" of the motion. 28 U.S.C. § 636(b)(1)(B). The district court must then review *de novo* any portion of the magistrate's report and recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). A "proper objection" means that the party has objected "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Absent objection by either party, the district court reviews the magistrate's recommendation for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### B.  Social Security Appeals

A claimant may obtain a federal district court's review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g). Courts reviewing a Social Security disability determination must uphold the ALJ's decision if (1) the ALJ's factual findings are supported by substantial evidence and (2) the ALJ applied the correct legal standards. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353

(4th Cir. 2023) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  To meet the threshold

of substantial evidence, a bar that is "not high," the administrative record must contain "more

than a mere scintilla" of evidence supporting the agency's factual determinations.  *Biestek v.*

*Berryhill*, 587 U.S. 97, 102–03 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)).  Substantial evidence does not require a "large or considerable amount of

evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In reviewing for substantial evidence, the court applies a "deferential standard" under

which the court does not "re-weigh conflicting evidence, make credibility determinations, or

substitute [its] judgment for the ALJ's."  *Arakas*, 983 F.3d at 95 (internal quotation marks

omitted) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  "[W]here conflicting

evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing

court "defer[s] to the ALJ's decision."  *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020)

(internal quotation marks omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

2012)); *see Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) ("An administrative decision

is not subject to reversal merely because substantial evidence would have supported an

opposite decision." (cleaned up)).  Furthermore, the court should consider "whether the ALJ

examined all relevant evidence and offered a sufficient rationale in crediting certain evidence

and discrediting other evidence."  *Shelley C.*, 61 F.4th at 353.

## II.    Background

The court adopts the recitation of facts and procedural history as set forth in the Magistrate Judge's R&R.    (R&R at 3–6, 9–10 (Dkt. 20).)    Here, the court restates the background that is most relevant to resolving Plaintiff's objections.

James applied for Disability Insurance Benefits under Title II of the Social Security Act in 2021.  (Admin. Record at 159–65 (Dkts. 6, 6-1–6-10) [hereinafter "R."].)  The benefits were denied on initial review and reconsideration.  (R. 78–79, 85–86.)  After filing a request for a hearing, (R. 89–90), James appeared before Administrative Law Judge ("ALJ") Holly Munday on November 15, 2023.  (R. 34–60.)  At the hearing, a vocational expert ("VE"), Dr. William Reed, testified as to the classifications of James's past work and responded to questions from the ALJ and James's attorney.  (R. 37–60.)  First, the ALJ asked Dr. Reed to "identify [James's] past work and explain his skills."  (R. 45.)  Dr. Reed described James's past "carpenter work" as follows:

> The claimant has testified that it was a light exertional demand as they're even lifting ten to 15 pounds.  He testified that in the heavier lifting, he was either put on parts, that he didn't wear a tool belt or that he had a helper that lifted heavier weight.  Therefore, based on the claimant's testimony, the work as he performed it, [Dictionary of Occupational Title ("DOT")] number for carpenter is 860.381-022, skilled work, SVP: 7, and was medium per the DOT last reviewed and mostly reported.

(*Id.*)  The ALJ followed up with two hypothetical questions for Dr. Reed:

> Q: I would like you to assume a hypothetical individual of the claimant's age, education, and past work you just described.  Let us assume an individual is able to lift 25 pounds occasionally and frequently.  How would you characterize that as far as medium or light[,] Dr. Reed[,] just with lifting?

A: For that <u>DOT</u> Your Honor, that would be medium. So with 20 pounds, which typically is a match for light.

Q: Okay, so then let's say medium work again, but the lifting is up to 25 pounds, frequently stoop, kneel, crouch, crawl and climb. Frequently reach overhead with right upper extremity. Frequent exposure to vibrations, and frequent exposure to hazardous conditions, including unprotected heights and moving machinery. Based on this hypothetical, is the individual able to perform the past work?

A: Yes, Your Honor. In my opinion he would be able to perform it both as he performed it and as per the <u>DOT</u>, Your Honor.

(R. 45–46.)

After briefly discussing portions of the "transferable skills analysis," or whether James's skills from past work could be applied to less demanding jobs, (R. 46–48), the ALJ circled back to the earlier hypothetical, (R. 48). She instructed Dr. Reed to "change the hypothetical from the 25-pounds lifting and carrying to light 20 or ten, everything else remains the same from the first hypothetical." (*Id.*) Dr. Reed agreed that under this adjusted hypothetical, "the past work as he performed it remains." (*Id.*) Then, the ALJ asked, "[i]f I had to change that last hypothetical to a standing and walking total of four hours and an eight-hour work per day, does that eliminate the past work?" (*Id.*) Dr. Reed responded that it would. (*Id.*)

On January 23, 2024, the ALJ denied Plaintiff's claim. (R. 18–27.) In its decision, the ALJ found that James "has the following severe impairments: degenerative disc disease, lumbar spinal stenosis, and obesity." (R. 21.) For James's residual functional capacity ("RFC"), the ALJ examined the evidence of his impairments and found

> that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with standing and/or walking up to 6 hours

and sitting up to 6 hours in an 8-hour workday except lifting and carrying 25 pounds occasionally and frequently; frequently stoop, kneel, crouch, crawl, and climb; frequently reaching overhead with the right upper extremity; and frequent exposure to vibrations, and frequent exposure to hazardous conditions, including unprotected heights and moving machinery.

(R. 22.)

Based on this RFC, the ALJ concluded that James "is capable of performing past relevant work as a carpenter." (R. 26.) To support her finding that carpenter work is not precluded by James's RFC, the ALJ pointed to the VE's testimony "that the past work could be performed if the hypothetical individual were limited to the residual functional capacity detailed" in the ALJ's RFC analysis. (*Id.*) The ALJ "compar[ed] the claimant's residual functional capacity with the physical and mental demands of this [carpenter] work" and found that James "is able to perform it as actually and generally performed." (*Id.*) Therefore, she concluded that James was not disabled, "as defined in the Social Security Act, from December 17, 2020, through the date of this decision." (*Id.*)

Thereafter, James appealed the ALJ's decision to this court. (Dkts. 1, 14.) James filed an initial brief in support of his appeal, (Pl.'s Br. (Dkt. 14)), and the Commissioner filed a brief in opposition, (Def.'s Br. (Dkt. 16)). On January 29, 2026, Judge Hoppe issued an R&R based on his review of the administrative record, the parties' briefs, and the applicable law. (R&R (Dkt 20).) He found that "the Commissioner's final decision is supported by substantial evidence," and recommended that the district judge affirm the Commissioner's decision. (*Id.* at 1.) James filed objections to the R&R on February 26. (Pl.'s Objs. (Dkt. 23).)

### III.    Analysis

James objects to the Magistrate Judge's recommended finding that the "ALJ's Step Four finding is supported by substantial evidence." (Pl.'s Objs. at 1.) He argues that the Magistrate Judge's conclusion is based "solely upon his own presumptions and interpretations of the record before the Court" rather than "confirmed testimony or articulation from the ALJ's written decision." (*Id.* at 3–4.)

### A.  Legal Framework

There is a "five-step sequential evaluation process" for determining whether a claimant is "disabled" within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4). First, the ALJ determines whether the claimant is working or "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). Second, the ALJ "consider[s] the medical severity" of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). At the third step, "the ALJ determines whether the claimant's impairments match—or are functionally equal to—an impairment listed in the regulations." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019). If so, the ALJ will find that the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If, as here, the ALJ does not find a match, the court progresses to the RFC assessment and to step four. *Id.* § 404.1520(a)(4); (*see* R. 25–26.)

"The ALJ determines the claimant's RFC between steps three and four of the five-step disability determination." *Bridget D. v. O'Malley*, No. 4:23-cv-00018, 2024 WL 4335930, at *2 (W.D. Va. Sept. 27, 2024) (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017)). RFC is typically calculated as a claimant's "*maximum* remaining ability to do

sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). "'[R]egular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

At step four, the ALJ decides whether the claimant's RFC "enables [him] to do the work [he] did in the past." *Thomas*, 916 F.3d at 310; *see* 20 C.F.R. § 404.1520(a)(4)(iv). If it does, the ALJ will find that the claimant is *not* disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv). But if the exertion required for the claimant's past work surpasses his RFC, the ALJ proceeds to step five, in which the ALJ decides whether the claimant "can do any other work that 'exists in significant numbers in the national economy.'" *Thomas*, 916 F.3d at 310 (quoting 20 C.F.R. § 416.960(c)(2)). The burden of proving steps one through four lies with the claimant, and then the burden shifts to the Commissioner to prove step five by a preponderance of the evidence. *Id.*; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

When determining whether the claimant can do his past relevant work, the court may rely on expert opinion testimony from a VE "in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 416.960(b)(2). The Fourth Circuit finds the VE's answers to hypothetical questions to be "relevant or helpful" when they are "based upon a consideration of all other evidence in the record" and given "in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). However, "[t]he

- 8 -

ALJ is afforded great latitude in posing hypothetical questions to a VE." *Mortazavi v. Astrue*, No. JKS 09-637, 2010 WL 3385460, at *4 (D. Md. Aug. 26, 2010).

### B. Application to ALJ Munday's Decision

In the ALJ's written decision, after the first three steps of the disability evaluation process did not yield a definitive answer as to whether James was disabled, (R. 20–22), the ALJ conducted her RFC assessment. First, the ALJ found that James's RFC allows him to "perform medium work as defined in 20 CFR 404.1567(c)." (R. 22.) Per the regulations, "medium work" includes, among other things, "lifting no more than 50 pounds at a time *with frequent lifting or carrying of objects weighing up to 25 pounds.*"[2] 20 C.F.R. § 404.1567(c) (emphasis added). Specifically for James, the ALJ found that he can sustain medium work with

> standing and/or walking up to 6 hours and sitting up to 6 hours in an 8-hour workday except *lifting and carrying 25 pounds occasionally and frequently*; frequently stoop, kneel, crouch, crawl, and climb; frequently reaching overhead with the right upper extremity; and frequent exposure to vibrations, and frequent exposure to hazardous conditions, including unprotected heights and moving machinery.

(R. 22 (emphasis added).)

Then, the ALJ found determined that James has past relevant work as a carpenter, categorized as DOT code 860.381-022. (R. 26, 45, 300.) The DOT characterizes this as "medium" work as generally performed. (R. 26.) However, in accordance with testimony from James and the VE, the ALJ found that the carpenter work constituted "light" work as

---

[2] A person who can perform medium work can also, by definition, perform light work. 20 C.F.R. § 404.1567(c). Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 404.1567(b).

James actually performed it. (*See* R. 26; R. 45 (VE testimony that "[t]he claimant has testified that [his carpenter work] was a light exertional demand").) The ALJ cited Dr. Reed's testimony to support her finding that his RFC enabled him to fulfill "the physical and mental demands of this work" and "perform it as actually and generally performed." (R. 26.)

James does not directly dispute the validity of the ALJ's RFC finding. Instead, James argues that there is an inconsistency between the RFC in the ALJ's written decision and the RFC communicated in one of the ALJ's hypothetical questions posed to the VE during the hearing. (Pl.'s Objs. at 2–3; Pl.'s Br. at 6–8.) Specifically, James highlights two discrepancies between the ALJ's hypothetical and written decision. (Pl.'s Objs. at 2–3; Pl.'s Br. at 6–8.) These differences are relevant because, when concluding that James can perform his past work at step four in her written decision, the ALJ relied on the VE's hearing testimony "that the past work could be performed if the hypothetical individual were limited to the [RFC] detailed." (R. 26.) James asserts that Dr. Reed "did *not* testify that Plaintiff could perform his past work because he was never asked if a person limited in the same manner as Plaintiff could perform such work." (Pl.'s Objs. at 5.) Thus, James argues, the ALJ "wrote a decision with findings that simply are not supported by the evidence contained in the record." (*Id.* at 3.)

For the first discrepancy, James highlights the omission of the frequency limitation in the ALJ's second hypothetical for Dr. Reed. The ALJ's written decision specified the frequency of James's "lifting and carrying" abilities in its RFC analysis, stating that James can perform medium work that includes "lifting and carrying 25 pounds *occasionally and frequently*." (R. 26 (emphasis added).) However, the second hypothetical presented to the VE had no such

frequency limitation; the ALJ asked whether a worker who can sustain medium work where "the lifting is up to 25 pounds" could also perform James's past carpenter work, without stating how often the lifting would occur.  (R. 46.)  James argues that, without a frequency limitation, the hypothetical "indicated that the lifting could be perform[ed] as often as constantly."  (Pl.'s Objs. at 3.)

For the second discrepancy, James takes issue with the same hypothetical question.  He emphasizes that the ALJ's hypothetical only mentioned that "lifting is up to 25 pounds," (R. 46), whereas the ALJ's written RFC determination stated, "lifting *and carrying* 25 pounds occasionally and frequently," (R. 26 (emphasis added)).  James contends that "[t]he difference in the lifting and carrying limitations is significant," and that the ALJ's omission of "carrying" in the verbal hypothetical could have led the VE to presume that the hypothetical worker could still *carry* up to 50 pounds.  (Pl.'s Objs. at 2–3.)

The court will overrule James's objections for several reasons.  First, the context of the surrounding questions and answers in Dr. Reed's testimony suggests that the "occasionally and frequently" limitation extended through all the hypotheticals, including the second one.[3]

---

[3] James characterizes the R&R's finding that the VE offered testimony supporting the ALJ's decision as relying on "*post hoc* rationalizations" that "point[] to no confirmed testimony or articulation from the ALJ's written decision." (Pl.'s Objs. at 4.)  James is correct that a reviewing court may not confirm an agency decision based on *post hoc* rationalizations. *See Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013).  However, here, the Magistrate's R&R relies on the contemporaneous administrative record—particularly, the hypothetical questions and exchanges between the ALJ and VE at the hearing—in deciding that the hypothetical question was appropriate and Commissioner's final decision is supported by substantial evidence. (R&R at 5–12.)  The Magistrate Judge appropriately "analyzed the written decision of the ALJ, the cited evidence relied on, and the ultimate conclusions reached." *Linda S. v. Dudek*, No. 2:24-CV-00050, 2025 WL 942843, at *4 (S.D.W. Va. Mar. 28, 2025); *cf. Arakas*, 983 F.3d at 109 (finding that an attempt to justify an ALJ's decision based on evidence "never even mentioned" within the decision was a "meritless post-hoc justification").  Therefore, the court does not agree that the R&R is improperly based on *post hoc* rationalizations.

The first hypothetical that the ALJ presented—the one immediately before the hypothetical at issue—imposed the frequency condition.  In this first hypothetical, the ALJ instructed Dr. Reed to "assume an individual is able to lift 25 pounds *occasionally and frequently*."  (R. 46.)  Dr. Reed answered that this first hypothetical "would be medium" exertion work.   (*Id.*)  Immediately after, to transition to the second hypothetical, the ALJ said, "[o]kay, so then let's say medium work again"—suggesting a general continuation of the first hypothetical's conditions, including the frequency limitations.  (*Id.*)  And several questions later, in her third hypothetical, the ALJ once again referred to the first hypothetical and maintained the same background conditions.  (R. 48 ("If I had to change the hypothetical from the 25-pounds lifting *and carrying* to light 20 or ten, *everything else remains the same from the first hypothetical.*  Am I correct that the past work as he performed it remains?" (emphasis added)).)   The third hypothetical also clarified that the ALJ and VE had been discussing 25-pound limits on both lifting *and* carrying.

James asserts that, in the second hypothetical, Dr. Reed may have erroneously believed the ALJ was asking about *constant* lifting up to 25 pounds or frequent carrying *up to 50 pounds.*  (Pl.'s Objs. at 3.)  Even though the ALJ did not expressly limit the frequency of the "lifting" or explicitly state "carrying" in this second hypothetical, she did specify that the hypothetical worker would be performing "medium work."  (*See* R. 46 ("Okay, so then let's say *medium work* again, but the lifting is up to 25 pounds, frequently stoop, kneel, crouch . . . ." (emphasis added)).)  Therefore, given both the "medium work" language and the context of the first hypothetical, the ALJ implied that the "lifting . . . up to 25 pounds," (*id.*), was only intended

to be frequently and/or occasionally rather than constantly, as the regulation's definition of medium work is "lifting no more than 50 pounds at a time with *frequent* lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c) (emphasis added). Similarly, the ALJ's clarification of "medium work" also communicates to Dr. Reed that any frequent carrying was only up to 25 pounds, rather than up to 50 pounds. *Id.*

"[C]ourts in the Fourth Circuit have repeatedly held that the hypotheticals posed to a VE need not be a literal recitation of a claimant's [RFC]." *Ross v. Berryhill*, No. 3:18-cv-00042, 2019 WL 289101, at *12 (E.D. Va. Jan. 3, 2019), *report and recommendation adopted*, No. 3:18-cv-00042, 2019 WL 281191 (E.D. Va. Jan. 22, 2019) (collecting cases). The ALJ need only "reasonably set out [the claimant's] impairments," *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003), and need not "include[] a verbatim account of Plaintiff's RFC," *Ross*, 2019 WL 289101, at *13. Here, although she cross-referenced between hypotheticals, the ALJ reasonably set out James's various lifting, carrying, and other exertional and non-exertional limitations in these questions.

Unlike in *Walker v. Bowen*, where the ALJ asked barebones questions that did not lay out any of the claimant's specific characteristics, the ALJ's series of questions at James's hearing "ensured that the vocational expert knew what the claimant's abilities and limitations were" such that the questions were useful. 889 F.2d at 51. Through her series of hypotheticals, the ALJ asked Dr. Reed whether an individual, like James, with his age, education, and past work—and an ability to lift and carry 25 pounds occasionally and frequently, along with the other exertional and non-exertional limitations identified in the written RFC determination—

- 13 -

would be able to perform James's past work.  (R. 45–48); *see Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).  And unlike the VE in *Walker v. Bowen*, Dr. Reed explicitly confirmed at the beginning of his testimony that he had "reviewed the file and exhibits to familiarize [himself] with the claimant's vocational background."  (R. 40, 44.)  The hypothetical questions posed to the VE adequately reflected James's characteristics, and the VE's responses were useful for the step four determination.

Ultimately, the court agrees with both James and the Magistrate Judge that the administrative record shows minor differences between the precise language the ALJ used in this singular hypothetical and in her written determination of RFC.  But, given the context of the preceding and following hypothetical questions, as well as the VE's presence during the hearing and testimony that he had reviewed the record, the court does not agree with James's contentions that these discrepancies undermine substantial evidence for the ALJ's step four conclusion or subvert the validity of the VE's testimony.  *See Carter v. Astrue*, No. CIV.A. CBD-10-1882, 2011 WL 3273060, at *10–11 (D. Md. July 27, 2011) (rejecting plaintiff's argument that the ALJ's hypothetical question was incomplete and did not provide enough detail, as the VE was present for the plaintiff's testimony, the VE reviewed the record, and the hypotheticals were reasonable).  Thus, ALJ Munday had substantial evidence to support her conclusion at step four.

Additionally, the harmless error rule applies to the court's review of Social Security appeals.  *See Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) ("Administrative adjudications are subject to the same harmless error rule that generally applies to civil

cases. . . . [I]f the agency's mistake did not affect the outcome, it would be senseless to vacate and remand for reconsideration."); *Brewer v. Berryhill*, No. 2:17-cv-00022, 2019 WL 1914813, at *13 (W.D. Va. Mar. 22, 2019), *report and recommendation adopted*, No. 2:17-cv-00022, 2019 WL 1903420 (W.D. Va. Apr. 29, 2019). Here, James has the burden of showing that an error is harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Garner v. Astrue*, 436 F. App'x 224, 226 (4th Cir. 2011) (unpublished per curiam decision) (finding that the claimant "has failed to show that he was harmed by the ALJ's drafting error"). James argued in his initial brief that "[t]he ALJ's failure to explain his reconciliation of this discrepancy is not harmless error." (Pl.'s Br. at 11.) He contended that because the denial of benefits turns on the ALJ's step four finding that James can resume past work, and the ALJ relied on the VE's testimony to make this determination, the step four finding is not supported by substantial evidence. (*Id.* at 9, 11; Pl.'s Objs. at 1–2.)

First, the ALJ does not rely solely on the VE's testimony. At step four, the ALJ also states that she "concurs" with the VE's testimony because, "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (R. 26.) She did not *need* to rely on VE testimony for this step four determination. *See Orr v. Berryhill*, No. 7:16-CV-25-FL, 2017 WL 3326980, at *6 (E.D.N.C. July 10, 2017), *report and recommendation adopted*, No. 7:16-CV-25-FL, 2017 WL 3324469 (E.D.N.C. Aug. 3, 2017) ("The regulations provide that in determining whether a claimant can perform past relevant work,

the ALJ *may* consult a VE or other resources such as the DOT." (citing 20 C.F.R. § 404.1560(b)(2))); *Kirkendoll v. Apfel*, 162 F.3d 1155, 1998 WL 539481, at *1–2 (4th Cir. Aug. 25, 1998) (unpublished table decision) ("Although specific reference to individual job demands is required to determine whether the claimant can return to his actual past job, when the ALJ analyzes past relevant work as it is performed in the national economy, she is entitled to rely on the exertional categories found in the DOT.").

Dr. Reed's response to the hypotheticals also shows that the ALJ's omission of an explicit reference to "carrying" and "frequently and occasionally" in the second hypothetical was harmless. The two jobs that the VE provided as satisfying the hypothetical were "cabinet maker" and "assembler component." (R. 47.) Both jobs have medium-level exertional requirements that do not require either (1) constant lifting up to 25 pounds, or (2) frequent carrying up to 50 pounds—the two limitations that James suggests the VE could have presumed based on the ALJ's hypothetical. *See* DOT, 660.280-010, 1991 WL 685839 (cabinet maker); DOT, 762.684-014, 1991 WL 680447 (assembler, component). Thus, even with the discrepancy between the RFC and the hypothetical, "because all the jobs provided by the vocational expert meet the stricter limitations posed by the RFC, the error by the ALJ was harmless, and does not warrant remand." *Morrisey v. Berryhill*, No. 1:17-cv-234, 2019 WL 1438292, at *5 (M.D.N.C. Apr. 1, 2019).

### IV.    Conclusion and Order

Following a *de novo* review of Plaintiff's objections, the record, the R&R, the parties' briefs, and the applicable law, the court agrees with the Magistrate Judge's recommendation.

- 16 -

For the foregoing reasons, the court concludes that the ALJ's findings are legally sufficient

and supported by substantial evidence.  Accordingly, it is hereby **ORDERED** that:

1.  The Report and Recommendation, (Dkt. 20), is **ADOPTED in its entirety**;

2.  Plaintiff's objections, (Dkt. 23), are **OVERRULED**; and

3.  The Commissioner's final decision is **AFFIRMED**.

    An appropriate Judgment Order will be entered.

    **ENTERED** this 23rd  day of March, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE